**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MYJORIE PHILIPPE, ALYSSA ROSE, VANESSA INOA, CASSIE ISZA, DAWN JOHNSON, and HELEN HOWARD, on behalf of themselves and all others similarly situated, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| NURTURE, INC., _____ | |
| Defendant. | |

Plaintiffs Myjorie Philippe, Alyssa Rose, Vanessa Inoa, Cassie Isza, Dawn Johnson, and Helen Howard ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant Nurture, Inc. ("Nurture") ("Defendant" or "Nurture"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, on the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.  Plaintiffs bring this class action on behalf of themselves and all other parents and persons nationwide who bought Defendant's baby food products containing harmful heavy metals such as inorganic arsenic, lead, cadmium, and mercury.

2.  The products purchased by Plaintiffs include, but are not limited to, the following general categories: Nurture's Happy Family Organic's HappyBABY Puffs, HappyBABY Cereal, HappyBABY Rice Cakes, HappyBABY Creamies, HappyBABY Teethers, HappyBABY Yogis, HappyBABY Jars, HappyBABY Pouches, and assorted HappyTOT products, including HappyTOT Cookies.

3.  More specifically, the products purchased by Plaintiffs include, but are not limited to:

1

HappyBABY Oats & Quinoa Baby Cereal Organic Whole Grains with Iron, HappyBABY Oatmeal Baby Cereal Clearly Crafted Organic Whole Grains, HappyBABY Organic Infant Formula with Iron Milk Based Powder, HappyBABY Organic Sweet Potatoes Jar, HappyBABY Organic Pears Jar, HappyBABY Organic Prunes Pouch, HappyBABY Organic Apples, Spinach & Kale Pouch, HappyBABY Organic Green Beans, Spinach & Pears Pouch, HappyBABY Organic Apples, Kale, & Avocados Pouch, HappyBABY Organic Pears, Kale, & Spinach Pouch, HappyBABY Organic Pears and Kale Jar, HappyBABY Organic Apples Mangos & Beets Jar, HappyBABY Organic Bananas & Strawberries Jar, HappyBABY Organic Bananas & Sweet Potatoes Jar, HappyBABY Organic Pears, Mangos & Spinach + Super Chia Pouch, HappyBABY Organic Bananas, Blueberries & Beets Jar, HappyBABY Organic Bananas, Beets & Blueberries Pouch, HappyBABY Organic Pear, Raspberries & Oats Pouch, HappyBABY Organic Pears, Squash & Oats Pouch, HappyBABY Organic Bananas, Spinach & Blueberries Pouch, HappyBABY Organic Apple, Spinach, Pea & Kiwi Pouch, HappyBABY Organic Squash, Pears & Apricots Pouch, HappyBABY Organic Pears, Mangos, & Spinach Pouch, HappyBABY Organic Zucchini, Apples, Pears, Quinoa & Basil Pouch, HappyBABY Organic Pears, Spinach & Blackberries Pouch, HappyBABY Organic Apples Blueberries & Oats Pouch, HappyBABY Organic Apples & Spinach Jar, HappyBABY Organic Carrots Jar, HappyBABY Organic Sweet Potatoes, Mangos & Carrots Pouch, HappyBABY Organic Peas, Bananas & Kiwi Pouch, HappyBABY Organic Pears, Pineapple & Avocado Jar, HappyBABY Organic Mangos Pouch, HappyBABY Organic Pears, Peas & Broccoli Pouch, HappyBABY Organic Apples, Sweet Potatoes & Granola Pouch, HappyBABY Superfood Puffs Apple & Broccoli Organic Grain Snack, HappyBABY Superfood Puffs Sweet Potato & Carrot Organic Grain Snack, HappyBABY Superfood Puffs Strawberry & Beet Organic Grain Snack, HappyBABY Superfood Puffs Kale & Spinach Organic Grain Snack, HappyBABY Superfood Puffs Banana & Pumpkin Organic Grain Snack, HappyBABY Organic Pears, HappyBABY Organic Apples, Kale & Oats Pouch, HappyBABY Organic Pears, Mangos, & Spinach Pouch, HappyBABY Organic Squash, Chickpeas & Spinach with Avocado Oil + Sage Pouch, HappyBABY Organic Bananas, Raspberries & Oats Pouch, HappyBABY Organic Apples & Blueberries Jar, HappyBABY Organic Bananas, Dragonfruit, Coconut Milk, Oats + Super Chia Pouch, HappyBABY Organic Apples & Walnut Butter Pouch, HappyBABY Organic Bananas &

Almond Butter Pouch, HappyBABY Organic Bananas & Peanut Butter Pouch, HappyBABY Organic Bananas, Plums, & Granola Pouch, HappyBABY Organic Pears & Cashew Butter Pouch, HappyBABY Organic Apple, Oats & Cinnamon Jar, HappyBABY Organic Rice Cakes Puffed Rice Snack, HappyBABY Organic Strawberry, Raspberry & Carrot Creamies, HappyBABY Organic Strawberry Yogis, HappyBABY Organic Strawberry Banana Greek Yogis, HappyBABY Organic Blueberry & Purple Carrot Greek Yogis, HappyBABY Organic Mixed Berry Yogis, HappyBaby Organic Teethers Mango & Pumpkin with Amaranth, HappyBABY Organic Teethers Strawberry & Beet with Amaranth, HappyBABY Organic Teethers Pea & Spinach, HappyBABY Organic Teethers Blueberry & Purple Carrot, HappyBABY Organic Teethers Sweet Potato & Banana, HappyTOT Organic Cinnamon & Sweet Potato + Flaxseed Multi-Grain ABC Cookies, HappyTOT Organic Vanilla Oat + Flaxseed Multi-Grain ABC Cookies, HappyTOT Organic Cheese & Spinach Ravioli Bowl, HappyTOT Organic Mac & Cheese with Lentil Pasta & Veggie Sauce, HappyTOT Organic Bananas, Peaches, Mangos, & Chia Pouch, HappyTOT Organic Carrots, Bananas, Mangos, & Sweet Potato Pouch, HappyTOT Organic Fiber Protein Pears, Blueberries, & Spinach Pouch, HappyTOT Fiber & Protein Organic Pears, Raspberries, Carrots & Butternut Squash Pouch, HappyTOT Organic Fiber Protein Pears, Blueberries, & Spinach Pouch, HappyTOT Organic Superfood Apples, Sweet Potatoes, Carrots, & Cinnamon Pouch (referred to herein as "HappyBABY Products").[1]

4.      Numerous scientific studies conducted over the last several decades have confirmed that inorganic arsenic, lead, cadmium, and mercury are developmental neurotoxins that are harmful to a baby's developing brain and nervous system. There are no established safe levels of these substances for baby foods.

5.      Babies and children who consume inorganic arsenic, lead, cadmium, or mercury are at risk of suffering health problems, a loss of intellectual capacity and behavioral problems such as attention-deficit/hyperactivity disorder ("ADHD"), among other things. Even the consumption of small amounts over time can increase the risk of bladder, lung and skin cancer, and Type 2 Diabetes. Moreover, medical professionals and scientists alike agree that early exposure to heavy metals can

---

[1] Plaintiffs reserve the right to expand the list of Nurture Products specifically identified herein as their investigation continues and/or they have had an opportunity to conduct discovery.

have long-term effects that are irreversible.

6.      On February 4, 2021, the U.S. House of Representatives Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform issued a detailed report titled, *Baby Foods are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* ("Report"). The Report revealed that some of the largest baby food manufacturers in an industry that generates over $50 billion annually in sales knowingly distributed and sold baby food containing harmful heavy metals such as inorganic arsenic, lead, cadmium, and mercury. Nurture was identified as one of four companies knowingly selling baby foods containing harmful heavy metals.

7.      Nurture manufactures, warrants, advertises, and sells the HappyBABY Products as being suitable and safe for consumption by babies. Among other things, Nurture uniformly represents on the package labeling that the HappyBABY Products are for crawling or sitting babies, created by real moms, real parents, pediatricians, and nutritionists who are on "a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks," and states that it has an "ENLIGHTENED NUTRITION PHILOSOPHY." Nurture's food labeling and statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the HappyBABY Products are safe and suitable for consumption by babies.

8.      As alleged herein, Defendant's marketing and advertising of its products is false, deceptive, and misleading to reasonable consumers because Defendant knows that heavy metals are harmful to babies yet sold products containing harmful heavy metals as evidenced by their own testing. Defendant's marketing and advertising of its products is also false, deceptive, and misleading to reasonable consumers because Defendant failed to warn and disclose material facts regarding its products, namely, that they were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that their internal testing showed that their products contained harmful heavy metals; and that their internal policies permitted the sale of baby food products with harmful heavy metals. The Defendant's distribution and sale of these products was unlawful, unfair, false, and misleading, and the Defendant was unjustly enriched at the expense of Plaintiffs and Class members.

9.      Plaintiffs and Class members would not have purchased the HappyBABY Products, or

would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; or that its policies permitted the sale of baby food products with harmful levels of heavy metals.

10.     Plaintiffs bring this action and assert claims on behalf of themselves and all other similarly situated persons (defined below) for fraud, deceptive, false, and misleading advertising and business practices, and unjust enrichment.

<u>**JURISDICTION AND VENUE**</u>

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and many members of the proposed Class are citizens of different states than the Defendant.

12.     This Court has personal jurisdiction over Defendant Nurture, Inc. because Defendant is headquartered in the State of New York, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant transacts substantial business in this District.

14.     This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

<u>**THE PARTIES**</u>

<u>**Plaintiffs**</u>

15.     Plaintiff Myjorie Philippe is a resident and citizen of Massachusetts. Plaintiff Philippe has bought HappyBABY Products, including HappyBABY Puffs and HappyBABY Rice Cakes from Shaw's, Target, Whole Foods, and Market Basket retail stores in various locations in Massachusetts, including Marlborough, Groton, Leominster, Hudson, Shrewsbury, and Worcester. Plaintiff Philippe regularly purchased these products since 2017, reviewed and relied on the representations on the packaging and believed the products to be safe and suitable for babies. Plaintiff Philippe's purchases took place during a time in which third-party testing showed that the HappyBABY Products contained

harmful heavy metals. If Plaintiff Philippe had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sales of products with harmful levels of heavy metals, Plaintiff Philippe would not have purchased the products or would have paid less for them.

16.     Plaintiff Alyssa Rose is a resident and citizen of Pennsylvania. Plaintiff Rose has bought HappyBABY Products, including HappyBABY Puffs, HappyBABY Rice Cakes, HappyBABY Teethers, and HappyBABY Yogis from Walmart and Giant Food retail stores in various locations around her home in Aston, Pennsylvania. Plaintiff Rose regularly purchased these products since 2017 and reviewed and relied on the representations on the packaging and believed the products to be safe and suitable for babies. Plaintiff Rose's purchases took place during a time in which third-party testing showed that the HappyBABY Products contained harmful heavy metals. If Plaintiff Rose had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Rose would not have purchased the products or would have paid less for them.

17.     Plaintiff Vanessa Inoa is a resident and citizen of Florida. Plaintiff Inoa has bought HappyBABY Products, including HappyBABY Pouches and HappyBABY Teethers from Walmart and Target retail stores in various locations in Florida, including St. Cloud and Kissimmee. Plaintiff Inoa regularly purchased these products starting in 2019, reviewed and relied on the representations on the packaging, and believed the products to be safe and suitable for babies. Plaintiff Inoa's purchases took place during a time in which third-party testing showed that the HappyBABY Products contained harmful heavy metals. If Plaintiff Inoa had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of

heavy metals, Plaintiff Inoa would not have purchased the products or would have paid less for them.

18.     Plaintiff Cassie Isza is a resident and citizen of Indiana. Plaintiff Isza has bought HappyBABY Products, including HappyBABY Pouches, HappyBABY Jars, HappyTOT products, HappyBABY Teethers, and HappyBABY Puffs, from Mejiers and other local retail stores in Mishawaka, Indiana. Plaintiff Isza regularly purchased these products starting in 2020, reviewed and relied on the representations on the packaging, and believed the products to be safe and suitable for babies. If Plaintiff Isza had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Inoa would not have purchased the products or would have paid less for them.

19.     Plaintiff Dawn Johnson is a resident and citizen of Ohio. Plaintiff Johnson has bought HappyBABY Products, including HappyBABY Pouches, HappyBABY Yogis, HappyBABY Creamies, HappyBABY Teethers, and HappyBABY Puffs, from Kroger retail stores in various locations in Ohio. Plaintiff Johnson regularly purchased these products starting in 2020, reviewed and relied on the representations on the packaging, and believed the products to be safe and suitable for babies. If Plaintiff Johnson had known that the products were unsafe and unsuitable for babies; that they contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Johnson would not have purchased the products or would have paid less for them.

20.     Plaintiff Helen Howard is a resident and citizen of North Carolina. Plaintiff Howard has bought HappyBABY Products, including HappyBABY Pouches, HappyBABY Jars, HappyBABY Creamies, HappyTOT Cookies, HappyTOT products, HappyBABY Yogis, and HappyBABY Teethers from Harris Teeter and Publix retail stores in various locations in Winston-Salem, North Carolina. Plaintiff Howard regularly purchased these products starting in 2020, reviewed and relied on the representations on the packaging, and believed the products to be safe and suitable for babies. If Plaintiff Howard had known that the products were unsafe and unsuitable for babies; that they

contained heavy metals; the levels of the heavy metals; that testing showed that these products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that the Defendant's policies permitted the sale of products with harmful levels of heavy metals, Plaintiff Howard would not have purchased the products or would have paid less for them.

### Defendant

21.     Defendant Nurture, Inc. is a citizen of Delaware, where it is incorporated, and New York because it maintains its principal place of business at 139 Fulton Street, New York, New York. Defendant does business throughout the United States. Defendant's baby food products are sold throughout the United States at large and small brick-and-mortar stores and online retailers.

### FACTUAL ALLEGATIONS

### There are No Established Safe Levels of Heavy Metals in Baby Food

22.     According to the U.S. House of Representatives' Report, "Children's exposure to toxic heavy metals causes permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior." The Report highlights numerous studies conducted over the last several decades analyzing the effects of early exposure of heavy metals and concluding that the harm is long-standing and irreversible.

23.     Babies are particularly vulnerable to the effects from exposure to heavy metals because they are small, and their organs are developing. Specifically, exposure to heavy metals during a baby's developmental stage can lead to "'untreatable and frequently permanent' brain damage, which may result in 'reduced intelligence, as expressed in terms of lost IQ points, or disruption in behavior.'"[2] According to Tom Neltner, chemical policy director for the Environmental Defense Fund ("EDF") which has studied lead in food for 25 years, "[e]xposure to these toxic heavy metals affects babies' brain development and nervous system, it affects their behavior, permanently decreases IQ, and, if you want to boil it down to dollars, their lifetime earnings potential."

24.     A published study titled, *A Strategy for Comparing the Contributions of Environmental Chemicals and Other Risk Factors to Neurodevelopment of Children*, found that exposure to heavy

_____

[2] Report at 9.

metals such as lead are "associated with 40,131,518 total IQ point loss in 25.5 million children (or roughly 1.57 lost IQ points per child)—more than the total IQ losses associated with preterm birth (34,031,025), brain tumors (37,288) and traumatic brain injury (5,827,300) combined."[3]

25.     The Food and Drug Administration ("FDA") has concluded that inorganic arsenic, lead, cadmium, and mercury are hazardous to babies and children and have "no established health benefit" and "lead to illness, impairment, and in high doses, death." Further, even low levels of these heavy metals are concerning to health and well-being.

**Inorganic Arsenic**

26.     The consumption of arsenic can result in serious and life-threatening health problems. The Department of Health and Human Services' Agency for Toxic Substances and Disease Registry ("ATSDR") has ranked arsenic as the number one substance present in the environment that poses the most significant threat to human health. The known health risks resulting from arsenic exposure include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children."[4]

27.     There is no established safe level of inorganic arsenic for baby foods. Consumer advocacy groups like Healthy Babies Bright Futures has advocated that there should be no measurable amount of inorganic arsenic in baby food, while Consumer Reports has advocated for a limit of 3 parts per billion ("ppb").

28.     For bottled water, the FDA has set a maximum level of arsenic at 10 ppb, while the Environmental Protection Agency ("EPA") and the World Health Organization ("WHO") have set a similar limit for drinking water.

29.     Several studies have found that arsenic has a significant negative effect on neurodevelopment in children, primarily in IQ levels. For example, a study of schoolchildren in Maine who drank water with an arsenic concentration level of more than 5 ppb showed significant decreases

---

[3] *Id.*

[4] Miguel Rodriguez-Barranco, et al. *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children: A Systematic Review and Met-Analysis* (June 1, 2013) (https://pubmed.ncbi.nlm.nih.gov/23570911) (last visited Feb. 10, 2021).

in "Full Scale IQ, Working Memory, Perceptional Reasoning and Verbal Comprehension scores."[5]

30.     Another study of children in Spain concluded that an increase in arsenic exposure resulted in a reduction of a child's global, gross, and fine motor function scores, and that boys were more susceptible to the neurotoxicity of arsenic.[6]

**Lead**

31.     According to the FDA, lead has no established health benefit. Lead is the second substance, after arsenic, on the ATSDR's list of substances present in the environment potentially posing a significant threat to human health. The consumption of low levels of lead from food and other sources has been found to contribute to 400,000 deaths every year.

32.     The Environmental Protection Agency ("EPA"), the Centers for Disease Control and Prevention ("CDC") and the American Academy of Pediatrics ("AAP") unanimously agree that there is no established "safe level of lead (Pb) in a child's blood; even low levels of Pb in the blood can result in behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia."[7] Consistent with this assessment, the AAP and the Environmental Defense Fund have proposed a maximum of 1 ppb of lead in food for babies and children.

33.     The FDA has established a maximum daily intake of lead from food (called the Interim Reference Level) of 3 μg (or 3 ppb) for kids and 12.5 μg (or 12.5 ppb) for women of childbearing age. The consumer organization Healthy Babies Bright Future has advocated for a standard of zero lead in baby food while Consumer Reports advocates for no more than 1 ppb of lead in foods and drinks for babies and children.

34.     Outside the food context, the FDA has set a maximum limit on lead of 5 ppb for bottled water. The EPA has set an action level of 15 ppb of lead for drinking water while the WHO has set 10

---

[5] Gail A. Wasserman, et al., *A Cross-Sectional Study of Well Water Arsenic and Child IQ in Maine Schoolchildren* (Apr. 1, 2014) (https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-23) (last visited Feb. 11, 2021).

[6] Antonio J. Signes-Pastor, et al., *Inorganic Arsenic Exposure and Neuropsychological Development of Children of 4-5 Years of Age Living in Spain* (Apr. 29, 2019) (www.ncbi.nlm.nih.gov/pmc/articles/PMC6541502/) (last visited Feb. 11, 2021).

[7] Valerie Zartarian, et al., *Children's Lead Exposure: A Multimedia Modeling Analysis to Guide Public Health Decision-Making* (Sept. 12, 2017) (https://ehp.niehs.nih.gov/doi/10.1289/ehp1605) (last visited Feb. 11, 2021).

ppb as a provisional guideline.

35.     Studies have shown that even low levels of lead exposure can have a negative impact on children. In two different studies of schoolchildren in Detroit and Chicago public schools, a significant inverse relationship was found between lead exposure and test scores. The Detroit study, in particular, found a strong correlation between early childhood lead exposure and reduced standardized test performance.[8] In the Chicago study, higher blood level concentrations were linked to lower reading and math scores in third-grade children, with a substantial 32% increase in failing reading and math.[9]

36.     Early childhood lead exposure can result in permanent cognitive effects, as one study showed. In that study, adults who had developmental delays associated with lead exposure continued to show cognitive deficits.[10]

37.     Several studies have also established a strong link between lead exposure and ADHD.[11]

38.     Jay Schneider, Ph.D., a professor of anatomy, pathology, and cell biology at Thomas Jefferson University in Philadelphia, has examined hundreds of children with lead exposure and believes that even the tiniest amounts of lead in children's food should be avoided.

### Cadmium

39.     The ATSDR identifies cadmium as number seven on its list of substances present in the environment that potentially poses a significant threat to human health. Cadmium, like inorganic arsenic, has been shown to affect a child's IQ level and the development of ADHD.

40.     Several federal and state agencies have regulated cadmium. Pursuant to Proposition 65, California has identified cadmium as causing developmental and male reproductive toxicity and has

---

[8] Nanhua Zhang, et al., *Early Childhood Lead Exposure and Academic Achievement: Evidence From Detroit Public Schools* (Mar. 2013) (https://pubmed.ncbi.nlm.nih.gov/23327265/) (last visited Feb. 11, 2021).

[9] Anne Evens, et al., *The Impact of Low-Level Lead Toxicity on School Performance Among Children in the Chicago Public Schools: A Population-Based Retrospective Cohort Study* (Apr. 7, 2015) (https://ehjournal.biomedcentral.com/articles/10.1186/s12940-015-0008-9) (last visited Feb. 11, 2021).

[10] Maitreyi Mazumdar, et al., *Low-Level Environmental Lead Exposure in Childhood and Adult Intellectual Function: A Follow-Up Study* (Mar. 30, 2011) (www.ncbi.nlm.nih.gov/pmc/articles/PMC3072933/) (last visited Feb. 11, 2021).

[11] Gabriele Donzelli, et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019) (www.mdpi.com/1660-4601/16/3/382/htm).

set an oral Maximum Allowable Dose Level ("MADL") of 4.1 μg (or 4.1 ppb) per day.

41.     The FDA and EPA have set a maximum allowable limit of cadmium of 5 ppb in bottled water and drinking water. The World Health Organization ("WHO") has set a maximum allowable limit of cadmium in drinking water at 3 ppb.

42.     Consumer groups have advocated for even stricter levels of cadmium in foods. For example, Healthy Babies Bright Futures has advocated that no measurable amount of cadmium should be in baby foods, while Consumer Reports has advocated for a limit of 1 ppb of cadmium in fruit juices.

43.     A study examining the effect of cadmium exposure on children concluded that it negatively impacted Full Scale IQ and in particular, boys. According to the 2018 study, boys "exhibiting higher amounts of cadmium exposure had seven fewer IQ points than those exhibiting less cadmium exposure."[12]

44.     Another 2018 study found a link between cadmium exposure and ADHD and concluded that ADHD was more prevalent among children with the high cadmium exposure as compared to the control group.[13]

### Mercury

45.     Mercury is the number three substance on ATSDR's list of substances in the environment potentially posing a significant threat to human health.

46.     As with inorganic arsenic, lead, and cadmium, Healthy Babies Bright Futures advocates for a goal of zero levels of mercury in baby food. Outside the baby food context, the FDA has set a limit of 2 ppb of mercury in bottled water, while the EPA has set a limit of 2 ppb for drinking water.

47.     Mercury's effect on children's development has been studied in the context of a pregnant woman's exposure to mercury. Pre-natal "mercury exposure has been consistently associated

---

[12] Report at 12 (citing Klara Gustin, et al., *Cadmium Exposure and Cognitive Abilities and Behavior at 10 Years of Age: A Prospective Cohort Study* (Apr. 2018) (https://pubmed.ncbi.nlm.nih.gov/29459184/) (last visited Feb. 11, 2021).

[13] Min-Jing Lee, et al., *Heavy Metals' Effects on Susceptibility to Attention-Deficit/Hyperactivity Disorder: Implication of Lead, Cadmium, and Antimony* (June 10, 2018) (https://pubmed.ncbi.nlm.nih.gov/29890770/) (last visited Feb. 11, 2021).

with adverse subsequent neuro-development."[14]

## THE HAPPYBABY PRODUCTS

### Nurture Represented that the HappyBABY Products are Safe and Suitable for Babies

48.     Nurture manufacturers, distributes, and sells food for babies under the brand name Happy Family Organics and offers several lines of baby food, including HappyBABY and HappyTOT. To gain the trust of the consuming public, Nurture touts the Happy Family Organics brand as a family company that cares about the health of babies and kids and the foods they eat. According to its website at www.happyfamilyorganics.com, it develops "personal relationships with farmers and partners we trust to make our products—so you can feel as good about nourishing your family as we do."

49.     Defendant uniformly markets, advertises, represents, and warrants the HappyBABY Products as safe and suitable for consumption by babies.

50.     Regarding the HappyBABY Puffs, on the front of the label in conspicuous font, Defendant represents that the food is for "crawling bab[ies]." On the back of the label, Defendant says in capital letters: "WE ARE A TEAM OF REAL PARENTS, PEDIATRICANS AND NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks" which it calls "superfoods," and that it has an "ENLIGHTENED NUTRITION PHILOSOPHY." On Defendant's Instagram page, Defendant represents that HappyBABY Puffs include ingredients that "support brain health":



---

[14] Margaret R. Karagas, et al., *Evidence on the Human Health Effects of Low-Level Methylmercury Exposure* (June 1, 2012) (https://pubmed.ncbi.nlm.nih.gov/22275730/) (last visited Feb. 11, 2021).

51.     Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the HappyBABY Puffs are safe and suitable for consumption by babies. The HappyBABY Puffs are sold in several flavors: Apple & Broccoli Puffs; Banana & Pumpkin Puffs; Kale & Spinach Puffs; Sweet Potato & Carrot Puffs; Strawberry & Beet Puffs; and Purple Carrot & Blueberry Puffs.

52.     Below are examples of the front and back labels of the HappyBABY Puffs product:

 

53.     Regarding the HappyBABY Rice Cakes, on the front of the label in conspicuous font, Defendant represents that the food is for "crawling bab[ies]." On the back of the label, Defendant says in capital letters: "WE ARE REAL MOMS, PEDIATRICANS AND NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks," that it has an "ENLIGHTENED NUTRITION PHILOSOPHY," and that the packaging is made without BPA. Defendant's statements, taken together and considered as a

whole from the perspective of a reasonable consumer, convey that the HappyBABY Rice Cakes are safe and suitable for consumption by babies. The HappyBABY Rice Cakes are sold in two flavors: Apple and Blueberry & Beet.

54. Below are examples of the front and back labels of the HappyBABY Rice Cakes product:

 

55. Regarding the HappyBABY Creamies, on the front of the label in conspicuous font, Defendant represents that the HappyBABY Creamies are for "crawling bab[ies]." On the back of the label, Defendant says in capital letters: "WE ARE REAL MOMS, PEDIATRICANS AND NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks," and states that it has an "ENLIGHTENED NUTRITION PHILOSOPHY." Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the HappyBABY Creamies are safe and suitable for consumption by babies and children. The HappyBABY Creamies are sold in two flavors: Strawberry, Raspberry and Carrot; and Apple, Spinach, Pea and Kiwi.

56.      Below are examples of the front and back labels of the HappyBABY Creamies product:

 

57.      Regarding the HappyBABY Teethers, on the front of the label in conspicuous font, Defendant represents that the HappyBABY Teethers are for "sitting bab[ies]." On the back of the label, Defendant says in capital letters: "WE ARE REAL MOMS, PEDIATRICANS AND NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks," and that it has an "ENLIGHTENED NUTRITION PHILOSOPHY." Defendant disclaims the use of unwanted ingredients. Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that the HappyBABY Teethers are safe and suitable for consumption by babies.

58.     Below are examples of the front and back labels of the HappyBABY Teethers product:

 

59.     Regarding the HappyBABY Yogis, on the front of the label in conspicuous font, Defendant represents that the HappyBABY Yogis are for "crawling bab[ies]." On the back of the label, Defendant says in capital letters: "WE ARE REAL MOMS, PEDIATRICANS AND NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant also claims to create "nutritious meals and snacks," and that it has an "ENLIGHTENED NUTRITION PHILOSOPHY." Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that the HappyBABY Yogis are safe and suitable for consumption by babies.

60.     Below are examples of the front and back labels of the HappyBABY Yogis product:

 

61.     Regarding the HappyBABY Jars, on the front label in conspicuous font, Defendant represents that the food is suitable for a certain age range. For example, "stage 1" foods are generally suitable for infants aged 4-6 months. Some of Defendant's HappyBABY Jars are listed as "clearly crafted," which Defendant represents as being more transparent in terms of sourced ingredients, stating at one point on its website that "[w]hen it comes to caring for your baby, transparency is everything:"



62.     And also stating at another point on its website that caregivers could "see the goodness right away" and "feed [their] baby with confidence:"



63.     Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, conveyed that the HappyBABY Jars are safe and suitable for consumption by babies.

64.     Below are examples of the front and back label of a HappyBABY Jars product:

 

65.     Regarding the HappyBABY Pouches, on the front label in conspicuous font, Defendant represents that the food is suitable for a certain age range. For example, "stage 2" foods are generally suitable for babies aged 6+ months. Like HappyBABY Jars, some of the HappyBABY Pouches products are listed as "clearly crafted." Defendant's statements, taken together and considered as a

whole, from the perspective of a reasonable consumer, convey that the HappyBABY Pouches are safe and suitable for consumption by babies.

66.     Below are examples of the front and back label of a HappyBABY Pouches product:




67.     Regarding HappyTOT Cookies, Defendant has labeled these products as a "Super Smart" product, which contain "DHA and choline to support brain health:"



68.     On the front label of HappyTOT Cookies in conspicuous font, Defendant represents

that the food is suitable for "tots & tykes." On the back of the label, Defendant says in capital letters: "WE ARE A TEAM OF REAL PARENTS, PEDIATRICANS & NUTRIONISTS on a mission to bring health and happiness to our little ones and the planet." Defendant's statements, taken together and considered as a whole, from the perspective of a reasonable consumer, convey that the HappyTOT Cookies are safe and suitable for consumption by young children.

69.     Below are examples of the front and back label of a HappyTOT Cookies product:

 

70.     As a whole, and outside of its individual products, Defendant's marketing and advertising of its brand and products would indicate to a reasonable consumer that Defendant's products are healthy, suitable, trusted, tested, quality products that can be safely consumed by a baby or child.

71.     In Defendant's "Mission Report" from 2019, it claimed to "curate our ingredients and tailor our products to baby's age and stage," that it "taste[s] and thoroughly analyze[s] every batch of food and each individual ingredient that goes into our products," that it "provide[s] your little one with products that, when part of a balanced diet, help them grow healthy and strong," and that "[e]very product we make goes through a rigorous quality and safety test so you can feel confident in what you're feeding your family," as shown below:



72.    And at various points on its website, Defendant has represented that it created "recipes perfectly matched with your child's age and stage," and that it sources "high-quality" ingredients and that its "promise is to bring you peace of mind:"





**Nurture Knowingly Sold Unsafe, Finished Baby Foods Containing Heavy Metals**

73.     In February 2021, the U.S. House of Representatives issued the Report revealing to the public for the first time that certain companies knowingly sold baby foods containing excessive levels of heavy metals, such as inorganic arsenic, lead, cadmium, and mercury. The Report identified Nurture as one of those companies.

74.     According to the Report, Nurture sold finished baby food products, including the HappyBABY Products, despite internal testing showing that the products were unsafe because they contained harmful heavy metals that even failed Nurture's own internal limits and which were unsafe for babies.

75.     For example, regarding inorganic arsenic, Nurture set an internal limit of 100 ppb, even though there is no established safe level of arsenic for baby foods. Further, Nurture's 100 ppb lead is 10 times more than the limit that the FDA has set for bottled water and that the EPA and WHO have set for drinking water. Also egregious is that Nurture's testing of its HappyBABY Products surpassed its own internal limit of 100 ppb for inorganic arsenic, as set forth in this chart which contains a few

examples of the testing results for HappyBABY Products:

| Parameter | Product Name | Goal Threshhold | Result | Date of Test Report |
|---|---|---|---|---|
| Lead | | | | |
| | Blueberry Purple Carrot Greek Yogis | 100 | 641 | 1/27/2017 |
| | Multi-Grain Cereal Canister | 100 | 580 | 8/30/2017 |
| | Pea Spinach Teether | 100 | 55 | 12/12/2018 |
| | Apple Spinach Pea Kiwi Creamies | 100 | 42 | 5/31/2018 |
| | Pea Spinach Teether | 100 | 23 | 07/11/19 |
| | Apple Spinach Pea & Kiwi | 100 | 43 | 3/29/2019 |

76.    Regarding lead, Nurture set an internal limit of 100 ppb, even though there is no amount of lead in a child's blood which is considered safe. Moreover, Nurture's internal limit of 100 ppb is 33 times more than the FDA's Interim Reference Level of 3 ppb of lead for food consumed by children. Further, Nurture's testing of its HappyBABY Products surpassed its already excessive internal limit as set forth in the below chart, which shows just a few examples of the testing results for the HappyBABY Products:

| Parameter | Product Name | Goal Threshhold | Result | Date of Test Report |
|---|---|---|---|---|
| Inorganic Arsenic | | | | |
| | Apple & Broccoli Puffs | 100 | 180 | 11/1/2017 |
| | Apple Rice Cakes | 100 | 130 | 2/8/2017 |
| | Sweet Potato & Carrot Puffs | 100 | 122 | 9/13/2018 |
| | Apple & Broccoli Puffs | 100 | 115 | 10/15/2018 |
| | Strawberry & Beet Puffs | 100 | 114 | 3/21/2019 |
| | Apple & Broccoli Puffs | 100 | 107 | 5/30/2019 |

77.    As to cadmium, Nurture set a limit of 50 ppb for cadmium, which is 10 times more than the limit the FDA and EPA have set for bottled water and drinking water, respectively. Internal testing showed that Nurture knowingly sold HappyBABY Products having as high as 49 ppb cadmium, or 10 times the amount allowed by the FDA and EPA for bottled and drinking water, and 12 times the maximum limit set by Proposition 65, as set forth in the below chart:

| Parameter | Product Name | Goal Threshhold | Result | Date of Test Report |
|---|---|---|---|---|
| Cadmium | | | | |
| | Multi-Grain Cereal Canister | 50 | 49 | 8/30/2017 |
| | Strawberry Raspberry Carrot Creamies | 50 | 36 | 12/6/2017 |
| | Kale & Spinach Puffs | 50 | 21 | 9/21/2018 |
| | Strawberry Raspberry Carrot Creamies | 50 | 31 | 10/23/2018 |
| | Carrots | 50 | 29 | 4/11/2019 |
| | Kale & Spinach Puffs | 50 | 35 | 10/09/19 |

78.     As the above testing shows, from 2017 to 2019 and possibly later, Nurture sold baby food products that had harmful levels of inorganic arsenic, lead, and cadmium. Twenty-nine products that Nurture sold tested at over 100 ppb inorganic arsenic. Numerous finished products that Nurture tested and sold had over 20 ppb lead, and numerous other products that Nurture tested and sold had over 5 ppb cadmium. Several HappyBABY food products also contained mercury.

79.     Despite touting itself as a family company that cares about babies and children and aims to provide nutritious and healthy foods, and conveying through statements on product labeling that the HappyBABY Products are safe and suitable for babies, Nurture sold food products that were unsafe for babies and also failed to warn and disclose material facts, including that its HappyBABY Products contained harmful heavy metals, including inorganic arsenic, lead, and cadmium.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Class initially defined as follows: All persons residing in the United States who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("National Class").

81.     Plaintiff Philippe also brings this action on behalf of herself and a Massachusetts State Class defined as follows: All persons residing in Massachusetts who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("Massachusetts State Class").

82.     Plaintiff Rose also brings this action on behalf of herself and a Pennsylvania State Class defined as follows: All persons residing in Pennsylvania who purchased for personal, family, or

household use, between 2017 to the present, one or more HappyBABY Products ("Pennsylvania State Class").

83.     Plaintiff Inoa also brings this action on behalf of herself and a Florida State Class defined as follows: All persons residing in Florida who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("Florida State Class").

84.     Plaintiffs Isza also brings this action on behalf of herself and an Indiana State Class defined as follows: All persons residing in Indiana who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("Indiana State Class").

85.     Plaintiff Johnson also brings this action on behalf of herself and an Ohio State Class defined as follows: All persons residing in Ohio who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("Ohio State Class").

86.     Plaintiffs Howard also brings this action on behalf of herself and a North Carolina State Class defined as follows: All persons residing in North Carolina who purchased for personal, family, or household use, between 2017 to the present, one or more HappyBABY Products ("North Carolina State Class").

87.     Excluded from the proposed National Class, the Massachusetts State Class, the Pennsylvania State Class, the Florida State Class, the Indiana State Class, the Ohio State Class, and the North Carolina State Class, are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest.

88.     Plaintiffs reserve the right to re-define any of the Class definitions prior to class certification and after having the opportunity to conduct discovery.

89.     This action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

## Numerosity of the Proposed Class

### (Fed. R. Civ. P. 23(a)(1))

90.     The members of the Class are so numerous that their individual joinder would be impracticable. The Class comprises at least hundreds of thousands of consumers. The precise number

of Class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendants' records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, supplemented (if deemed necessary or appropriate by the Court) by published notice.

**Predominance of Common Questions of Fact and Law**

**(Fed. R. Civ. P. 23(a)(2); 23(b)(3))**

91.     Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members of the Class. The common legal and factual questions include, without limitation:

(a)     Whether Defendant knew its products contained harmful heavy metals that rendered their baby food products unsafe for babies;

(b)     Whether Defendant's affirmative representations about its products, when considered as a whole, were false and misleading to reasonable consumers because the products were unsafe for babies, contained harmful heavy metals as Defendant's internal testing showed, and because Defendant's internal policies permitted the sale of the products with harmful levels of heavy metals;

(c)     Whether Defendant failed to warn and disclose material facts regarding its products, namely, that they were unsafe for babies; that they contained heavy metals or the level of heavy metals; that the Defendant's testing showed that its products contained harmful heavy metals; and that the Defendant's policies permitted the sale of the products with harmful levels of heavy metals;

(d)     Whether Defendant violated the state consumer protection statutes alleged herein;

(e)     Whether Defendant was unjustly enriched; and

(f)     The nature of the relief, including damages and equitable relief, to which Plaintiffs and the members of the Class are entitled.

## Typicality of Claims

### (Fed. R. Civ. P. 23(a)(3))

92.     Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased Defendant's products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class members.

## Adequacy of Representation

### (Fed. R. Civ. P. 23(a)(4))

93.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation.

94.     Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

## Superiority of a Class Action

### (Fed. R. Civ. P. 23(b)(3))

95.     A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the Class. There is no special interest in Class members individually controlling the prosecution of separate actions. The damages suffered by individual members of the Class, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. And, even if members of the Class themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### Risk of Inconsistent or Dispositive Adjudications and the Appropriateness
### of Final Injunctive or Declaratory Relief

**(Fed. R. Civ. P. 23(b)(1) and (2))**

96.     In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

### Issue Certification

**(Fed. R. Civ. P. 23(c)(4))**

97.     In the alternative, the common questions of fact and law, set forth in Paragraph 91, are appropriate for issue certification on behalf of the proposed Class.

### FIRST CAUSE OF ACTION

**Violations of the Massachusetts Consumer Protection Law**
**Mass. Gen. Laws Ch. 93A**
**(On Behalf of Plaintiff Philippe and the Massachusetts State Class)**

98.     Plaintiff Philippe incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

99.     Plaintiff Philippe brings this claim on behalf of herself and the Massachusetts State Class against Defendant Nurture.

100.     Defendant, Plaintiff Philippe, and the Massachusetts State Class are "persons" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

101.     Defendant engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws

ch. 93A, § 1(b).

102.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A, § 2. Defendant participated in misleading, false, or deceptive acts that violated the Massachusetts Act.

103.    In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Philippe and to the Massachusetts State Class members that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

104.    Plaintiff Philippe and Massachusetts State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff Philippe and Massachusetts State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

105.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

106.    Defendant intentionally and knowingly misrepresented material facts regarding the HappyBABY Products with intent to mislead Plaintiff Philippe and the Massachusetts State Class.

107.    Defendant knew or should have known that their conduct violated the Massachusetts Act.

108.    Defendant owed Plaintiff Philippe and the Massachusetts State Class a duty to disclose

the true and unsafe nature of the HappyBABY Products.

109.    Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Philippe and to the Massachusetts State Class.

110.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Philippe and the Massachusetts State Class, about the true nature of the HappyBABY Products.

111.    Plaintiff Philippe and the Massachusetts State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

112.    Defendant's violations present a continuing risk to the Massachusetts State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

113.    Plaintiff Philippe and the Massachusetts State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Massachusetts Act. Plaintiff Philippe and the Massachusetts State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

114.    As a direct and proximate result of Defendant's violations of the Massachusetts Act, Plaintiff Philippe and the Massachusetts State Class have suffered injury-in-fact and/or actual damage.

115.    Pursuant to Mass. Gen. Laws Ch. 93A, § 9, Plaintiff Philippe and the Massachusetts State Class seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Massachusetts State Class member. Because Defendant's conduct was committed willfully and knowingly, each Massachusetts State Class member is entitled to recover up to three times actual

damages, but no less than two times actual damages.

116.    Plaintiff Philippe and the Massachusetts State Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

117.    Pursuant to Mass. Gen. Laws, Ch. 93A § 9(3), on May 11, 2021, Defendant was provided with a written demand for relief. Additionally, Defendant was provided notice of the issues raised in this cause of action and this Complaint. Defendant did not respond to Plaintiff's written demand. Plaintiff Philippe and the Massachusetts State Class seek all damages and relief to which it is entitled.

118.    As a result of Defendant's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability
### Mass. Gen. Laws c. 106 § 2-314
### (On Behalf of Plaintiff Philippe and the Massachusetts State Class)

119.    Plaintiff Philippe hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

120.    Plaintiff Philippe brings this claim on behalf of herself and the Massachusetts State Class against Defendant Nurture.

121.    Nurture is and was at all relevant times a "merchant" with respect to HappyBABY Products under M.G.L c. 106 § 2-104(1) and is a "seller" of HappyBABY Products under § 2-103(1)(d).

122.    The HappyBABY products are and were at all relevant times "goods" within the meaning of M.G.L. c. 106 § 2-105(1).

123.    A warranty that the HappyBABY Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law pursuant to M.G.L. c. 106 § 2-314.

124.    The HappyBABY Products, when sold and at all times thereafter, were not in

merchantable condition and are not fit for the ordinary purpose for which the HappyBABY Products are used. Specifically, Defendant's HappyBABY Products are inherently defective in that they contain harmful levels of heavy metals and thus are not suitable and not safe for consumption by babies.

125.    On May 11, 2021, Defendant was provided reasonable notice of its breach and an opportunity to cure by way of a demand letter sent by Plaintiff Philippe. Defendant was also provided notice by the numerous consumer class action complaints filed against it.

126.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Philippe and the Massachusetts State Class members have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 P.S. § 201-1 *et seq.*
(On Behalf of Plaintiff Rose and the Pennsylvania State Class)**

127.    Plaintiff Rose hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

128.    Plaintiff Rose brings this claim on behalf of herself and the Pennsylvania Classes against Defendant Nurture.

129.    Plaintiff Rose, Defendant, and the members of the Pennsylvania Classes are "persons" within the meaning of 73 P.S. § 201-2(2).

130.    The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201 3.

131.    In the course of business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Rose and the Pennsylvania State Class that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with

harmful levels of heavy metals.

132.    Plaintiff Rose and the Pennsylvania State Class had no way of discerning that Defendant's representations were false and misleading because Plaintiff Rose and the Pennsylvania State Class did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

133.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

134.    Defendant intentionally and knowingly misrepresented material facts regarding the HappyBABY Products with intent to mislead Plaintiff Rose and the members of the Pennsylvania State Class.

135.    Defendant knew or should have known that their conduct violated the Pennsylvania UTPA.

136.    Defendant owed Plaintiff Rose and the Pennsylvania State Class a duty to disclose the true and unsafe nature of the HappyBABY Products.

137.    Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Rose and the Pennsylvania State Class.

138.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Rose and the Pennsylvania State Class, about the true nature of the HappyBABY Products.

139.    Plaintiff Rose and the Pennsylvania State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test

finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

140.    Defendant's violations present a continuing risk to Plaintiff Rose and the Pennsylvania State Class, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

141.    Plaintiff Rose and the Pennsylvania State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA. Plaintiff Rose and the Pennsylvania State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

142.    As a direct and proximate result of Defendant's violations of the Pennsylvania UTPA, Plaintiff Rose and Pennsylvania State Class members have suffered injury-in-fact and/or actual damage.

143.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiff Rose and the Pennsylvania State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability
### 13. Pa. Cons. Stat. § 2314
### (On Behalf of Plaintiff Rose and the Pennsylvania State Class)

144.    Plaintiff Rose hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

145.    Plaintiff Rose brings this claim on behalf of herself and the Pennsylvania State Class against Defendant Nurture.

146.    Nurture is and was at all relevant times a "merchant" with respect to HappyBABY Products under 13 Pa. Const. Stat. § 2-104 and is a "seller" of HappyBABY Products under § 2-103(a).

147.     The HappyBABY products are and were at all relevant times "goods" within the meaning of 13 Pa. Const. Stat. § 2-105(a).

148.     A warranty that the HappyBABY Products were in merchantable condition and fit for the ordinary purpose for which baby food products are used is implied by law pursuant to 13 Pa. Const. Stat. § 2-314.

149.     The HappyBABY Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which the HappyBABY Products are used. Specifically, Defendant's HappyBABY Products are inherently defective in that they contain harmful levels of heavy metals and thus are not suitable and not safe for consumption by babies.

150.     On May 11, 2021, Defendant was provided reasonable notice of its breach and an opportunity to cure by way of a demand letter sent by Plaintiff Rose. Defendant was also provided notice by the numerous consumer class action complaints filed against it.

151.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff Rose and the Pennsylvania State Class members have been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

**Violations of the Florida Unfair & Deceptive Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**(On Behalf of Plaintiff Inoa and the Florida State Class)**

152.     Plaintiff Inoa hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

153.     Plaintiff Inoa brings this claim on behalf of herself and the Florida State Class against Defendant Nurture.

154.     Plaintiff Inoa and members of the Florida State Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

155.     Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

156.    FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

157.    In the course of its business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Inoa and to the Florida State Class members that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

158.    Plaintiff and Florida State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff and Florida State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

159.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

160.    Defendant intentionally and knowingly misrepresented material facts regarding the HappyBABY Products with intent to mislead Plaintiff Inoa and the Florida State Class.

161.    Defendant knew or should have known that its conduct violated the FUDTPA.

162.    Defendant owed Plaintiff Inoa and the Florida State Class a duty to disclose the true and unsafe nature of the HappyBABY Products.

163.    Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Inoa and to the Florida State Class.

164.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Inoa and the Florida State Class, about the true nature of the HappyBABY Products.

165.    Plaintiff Inoa and the Florida State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

166.    Defendant's violations present a continuing risk to the Florida State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

167.    Plaintiff Inoa and the Florida State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the FUDTPA. Plaintiff Inoa and the Florida State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

168.    As a direct and proximate result of Defendant's violations of the FUDTPA, Plaintiff Inoa and the Florida State Class have suffered injury-in-fact and/or actual damage.

169.    Plaintiff Inoa and the Florida State Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

170.    Plaintiff Inoa and the Florida State Class also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the FUDTPA.

## SIXTH CAUSE OF ACTION

**Violations of the Indiana Deceptive Consumer Sales Act ("DCSA")**
**Ind. Code § 24-5-0.5-3**
**(On Behalf of Plaintiff Isza and the Indiana State Class)**

171.    Plaintiffs Isza hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

172.    Plaintiff Isza brings this claim on behalf of herself and the Indiana State Class against Defendant Nurture.

173.    In the course of its business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Isza and to the Indiana State Class members that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

174.    Plaintiff Isza and Indiana State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff Isza and Indiana State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

175.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

176.    Defendant intentionally and knowingly misrepresented material facts regarding the

HappyBABY Products with intent to mislead Plaintiff Isza and the Indiana State Class.

177.    Defendant knew or should have known that its conduct violated the Indiana DCSA.

178.    Defendant owed Plaintiff Isza and the Indiana State Class a duty to disclose the true and unsafe nature of the HappyBABY Products.

179.    Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Isza and to the Indiana State Class.

180.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Isza and the Indiana State Class, about the true nature of the HappyBABY Products.

181.    Plaintiff Isza and the Indiana State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

182.    Defendant's violations present a continuing risk to the Indiana State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

183.    Plaintiff Isza and the Indiana State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Indiana DCSA. Plaintiff Isza and the Indiana State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

184.    As a direct and proximate result of Defendant's violations of the Indiana DCSA, Plaintiff Isza and the Indiana State Class have suffered injury-in-fact and/or actual damage.

185.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana State Class seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial

and (b) statutory damages in the amount of $500 for each Indiana State Class member, including treble damages up to $1,000 for Defendant's willfully deceptive acts.

186.    The Indiana State Class also seeks punitive damages based on the outrageousness and recklessness of the Defendant's conduct and Defendant's high net worth.

187.    Pursuant to Ind. Code § 24-5-0.5-5(a), Plaintiff Isza sent a notice letter to Defendant. Additionally, Defendant was provided notice of the issues raised in this count and this Complaint by way of the investigations conducted by governmental regulators. The Indiana State Class seeks all damages and relief to which it is entitled.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Violation of the Ohio Deceptive Trade Practices Act**
**Ohio Rev. Code § 4165.01 *et seq.***
**(On Behalf of Plaintiff Johnson and the Ohio State Class)**

188.    Plaintiff Johnson hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

189.    Plaintiff Johnson brings this claim on behalf of herself and the Ohio State Class against Defendant Nurture.

190.    Defendant, Plaintiff Johnson, and the Ohio State Class are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

191.    Defendant engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

192.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; . . . (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a

particular style or model, if they are of another; . . . [or] (11) Advertises goods or services with intent not to sell them as advertised."

193.     In the course of its business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Johnson and to the Ohio State Class members that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

194.     Plaintiff Johnson and Ohio State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff Johnson and Ohio State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

195.     Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

196.     Defendant intentionally and knowingly misrepresented material facts regarding the HappyBABY Products with intent to mislead Plaintiff Johnson and the Ohio State Class.

197.     Defendant knew or should have known that its conduct violated the Ohio DTPA.

198.     Defendant owed Plaintiff Johnson and the Ohio State Class a duty to disclose the true and unsafe nature of the HappyBABY Products.

199.     Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Johnson and to the Ohio State Class.

200.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Johnson and the Ohio State Class, about the true nature of the HappyBABY Products.

201.     Plaintiff Johnson and the Ohio State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

202.     Defendant's violations present a continuing risk to the Ohio State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

203.     Plaintiff Johnson and the Ohio State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Ohio DTPA. Plaintiff Johnson and the Ohio State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

204.     Pursuant to Ohio Rev. Code § 4165.03, Plaintiff Johnson and the Ohio State Class seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

## EIGHTH CAUSE OF ACTION

**Violations of the North Carolina Unfair and Deceptive Acts and Practices Act**
**N.C. Gen. Stat. § 75-1.1 *et seq.***
**(On Behalf of Plaintiff Howard and the North Carolina State Class)**

205.     Plaintiff Howard hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

206.     Plaintiff Howard brings this claim on behalf of herself and the North Carolina State Class against Defendant Nurture.

207.    Plaintiff Howard and North Carolina State Class members are persons under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* ("NCUDTPA").

208.    Defendant's acts and practices complained of herein were performed in the course of Defendant's trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

209.    The NCUDTPA makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. Gen. Stat. § 75-16.

210.    In the course of its business, Defendant made affirmative misrepresentations that conveyed to Plaintiff Howard and to the North Carolina State Class members that the HappyBABY Products were safe and suitable for babies. Defendant, however, concealed and suppressed material facts concerning the HappyBABY Products, including that the HappyBABY Products were unsafe and unsuitable for babies; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the HappyBABY Products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

211.    Plaintiff Howard and North Carolina State Class members had no way of discerning that Defendant's representations were false and misleading because Plaintiff Howard and North Carolina State Class members did not have access to Defendant's internal testing, internal policies, or any internal documents showing the presence of harmful heavy metals.

212.    Defendant thus violated the Act by making statements, when considered as a whole from the perspective of the reasonable consumer, that conveyed that the HappyBABY Products were safe and suitable for babies. Defendant also failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

213.    Defendant intentionally and knowingly misrepresented material facts regarding the HappyBABY Products with intent to mislead Plaintiff Howard and the North Carolina State Class.

214.    Defendant knew or should have known that its conduct violated the NCUDTPA.

215.    Defendant owed Plaintiff Howard and the North Carolina State Class a duty to disclose the true and unsafe nature of the HappyBABY Products.

216.    Defendant's concealment of the true characteristics of the HappyBABY Products was material to Plaintiff Howard and the North Carolina State Class.

217.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff Howard and the North Carolina State Class, about the true nature of the HappyBABY Products.

218.    Plaintiff Howard and the North Carolina State Class would not have purchased the HappyBABY Products, or would have paid less, had they known that the products were unsafe and unsuitable for babies; that they contained heavy metals or the levels of heavy metals; that Defendant's testing showed that its products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; or that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

219.    Defendant's violations present a continuing risk to the North Carolina State Class as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

220.    Plaintiff Howard and the North Carolina State Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and concealment of and failure to disclose material information. Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive practices under NCUDTPA. Plaintiff Howard and the North Carolina State Class suffered ascertainable loss as a result of Defendant's deceptive and unfair acts and practices made in the course of Defendant's business.

221.    As a result of the foregoing wrongful conduct of Defendants, Plaintiff Howard and the North Carolina State Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including but not limited to treble damages, an order enjoining Defendant's deceptive

and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available under N.C. Gen. Stat. § 75-16.

## NINTH CAUSE OF ACTION

**Unjust Enrichment**
**(On Behalf of Plaintiffs, the National Class,**
**the Massachusetts State Class, the Pennsylvania State Class, the Florida State Class, the Indiana State Class, the Ohio State Class, and the North Carolina State Class)**

222.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

223.    Plaintiffs and Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's HappyBABY Products that were unsafe and not suitable for babies. Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

224.    Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Among other things, Defendant failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

225.    Defendant retained those benefits even though the HappyBABY Products contain harmful heavy metals that render the HappyBABY Products unsafe and unsuitable for consumption by babies. If Plaintiffs and Class members had known the true nature of the HappyBABY Products, they would not have paid money for them or would have paid less.

226.    Plaintiffs and Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

## TENTH CAUSE OF ACTION

**Fraud**
**(Concealment and Omissions)**
**(On Behalf of Plaintiffs, the National Class,**
**the Massachusetts State Class, the Pennsylvania State Class, the Florida State Class, the Indiana State Class, the Ohio State Class, and the North Carolina State Class)**

227.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

228.    Defendant made affirmative misrepresentations, partial-truths, and purposefully concealed the true facts on each package of the HappyBABY Products. Defendant made these misrepresentations, partial truths to, and concealed the truth from, Plaintiffs and Class members about the HappyBABY Products knowing that the products contained harmful heavy metals, the level of heavy metals, or that internal policies permitted Defendant to sell products containing harmful heavy metals.

229.    Defendant's representations and partial truths were false. As a result of Defendant's false and misleading statements and deceptions, and omissions, Defendant achieved its desired result—to sell products that it otherwise would not have or at higher prices.

230.    Defendant knew that its misrepresentations and omissions in this regard were false and/or misleading. Defendant has been aware of the falsity and misleading nature of their affirmative misrepresentations and omissions for several years.

231.    Defendant had a duty to disclose the material facts alleged herein because it had exclusive and superior access to, and knowledge about, the levels of heavy metals in their foods and their internal testing policies and limits. Defendant also had a duty to disclose because it made affirmative representations to Plaintiffs and Class members, and the general public about the nature, quality, and characteristics of the HappyBABY Products. Specifically, Defendant affirmatively represented that the HappyBABY Products were suitable and safe for babies when it knew this was false and/or misleading. This duty applied at the time Plaintiffs and Class members purchased the HappyBABY Products, and it continues to apply today.

232.    Defendant failed to disclose and warn that the HappyBABY Products were unsafe and unsuitable for children; that they contained heavy metals; the level of the heavy metals; that internal testing showed that the products contained harmful heavy metals; that Defendant did not regularly test finished products for heavy metals; and that Defendant's policies permitted the sale of products with harmful levels of heavy metals.

233.    Defendant intended for Plaintiffs and Class members to rely on their misrepresentations

and omissions. Defendant engaged in this course of conduct to sell the HappyBABY Products in the United States market with disregard of the unsafe nature of the products for babies. Defendant's acts were done wantonly, maliciously, oppressively, and deliberately, with the intent to defraud Plaintiffs and Class members and with reckless and conscious disregard for Plaintiffs' and Class members' rights.

234.    Defendant's misrepresentations, partial-truths, and omissions were material to Plaintiffs' and Class members' decision to buy the HappyBABY Products. Defendant was aware—and exploited—the fact that Plaintiffs and Class members turned to HappyBABY and trusted Nurture to sell safe baby food and to disclose material facts.

235.    Plaintiffs and Class members could not have discovered the truth about the HappyBABY Products as Defendant concealed these facts from the public until it was asked to comply with a congressional investigation and the Report became public. Plaintiffs and Class members could not have otherwise known of Defendant's scheme and ongoing deception.

236.    Plaintiffs and Class members reasonably relied on the representations and omissions in purchasing the HappyBABY Products. Had Defendant disclosed to Plaintiffs and Class members the material facts alleged herein on the product packaging, Plaintiffs and Class members would have seen such disclosures as they relied on Defendant's representations. Further, had Plaintiffs and Class members known the truth about the HappyBABY Products and the true characteristics of the products, they would not have acted as they did. Plaintiffs and Class members would not have purchased the HappyBABY Products, or they would have paid less for such products.

237.    Plaintiffs and Class members were injured by their reliance on Defendant's misrepresentations, partial-truths, and omissions. Plaintiffs and Class members have been damaged because they purchased products that were unsafe for babies and not as represented, and, because of that deception have been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for relief and judgment against Defendant as follows:

A.    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure,

appointing Plaintiffs as a representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

       B.      Awarding Plaintiffs and the Class compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

       C.      Awarding Plaintiffs and the Class appropriate relief, including actual and statutory damages;

       D.      For punitive damages;

       E.      For declaratory and equitable relief, including restitution and disgorgement;

       F.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

       G.      Awarding Plaintiffs and the Class the costs of prosecuting this action, including expert witness fees;

       H.      Awarding Plaintiffs and the Class reasonable attorneys' fees and costs as allowable by law;

       I.      Awarding pre-judgment and post-judgment interest; and

       J.      Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: August 6, 2021

By: */s/ Max E. Rodriguez*
Max E. Rodriguez
Christopher K. Leung
Alison Borochoff-Porte (admission forthcoming)
**POLLOCK COHEN LLP**
60 Broad St., 24th Fl.
New York, New York 10004
Telephone: (646) 290-7509
Email: Max@PollockCohen.com

Rosemary M. Rivas (*pro hac vice* forthcoming)
Mark Troutman* (*pro hac vice* forthcoming)
Rosanne L. Mah (*pro hac vice* forthcoming)
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 110
Oakland, California 94612

Telephone: (510) 350-9700
Facsimile: (510) 350-9701
Email: rmr@classlawgroup.com
*working from Ohio office

*Attorneys for Plaintiffs and the Proposed
Class Members*